1  MANATT, PHELPS & PHILLIPS, LLP
   BECCA WAHLQUIST (State Bar No. 215948)
2  E-mail: bwahlquist@manatt.com
   LYDIA M. MENDOZA (State Bar No. 247916)
3  E-mail: lmendoza@manatt.com
   JUDD GRUTMAN (State Bar No. 275304)
4  E-mail: jgrutman@manatt.com
   11355 West Olympic Boulevard
5  Los Angeles, CA  90064-1614
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  SELTZER CAPLAN MCMAHON VITEK
   J. SCOTT SCHEPER (State Bar No. 155477)
8  E-mail: scheper@scmv.com
   CHRISTINE M. LAPINTA (State Bar No. 225990)
9  E-mail: lapinta@scmv.com
   2100 Symphony Towers
10 750 B Street
   San Diego, CA  92101
11 Telephone: (619) 685.3003
   Facsimile: (619) 685.3100

12
   Attorneys for Defendant
13 DIRECTV, LLC

14                    UNITED STATES DISTRICT COURT

15                 SOUTHERN DISTRICT OF CALIFORNIA

16

17 | TARA MILLER, individually and on behalf of all others similarly situated, | Case No.  3:13-cv-02073-L-WMC |
18 | | (PUTATIVE CLASS ACTION COMPLAINT) |
   | Plaintiffs, | |
19 | vs. | DIRECTV'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS, OR, IN THE ALTERNATIVE, TO TRANSFER PLAINTIFF'S COMPLAINT |
20 | DIRECTV, LLC; THE CMI GROUP, INC., THE CMI GROUP GP, LLC, and CREDIT MANAGEMENT, LP, | |
21 | | |
22 | | |
   | Defendants. | |
23 | | |
24 | | Hearing Date:  February 18, 2014 Time:            10:30 a.m. Place:           Courtroom 5B |
25 | | |
26 | | Hon. M. James Lorenz |

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

# TABLE OF CONTENTS

2

**Page**

3
I.      INTRODUCTION ........................................................................... 1

4
II.     THIS COURT SHOULD STRIKE PLAINTIFF'S CLASS
        ALLEGATIONS PURSUANT TO RULE 12(F) ........................... 2

5
        A.      The Class Allegations Should Be Stricken Because The Class Is
6               Overbroad And Includes Individuals With No Viable Claims,
                Individuals Who Are Necessarily Covered By Existing Class
7               Action Suits, As Well As DIRECTV Customers Who Are
                Subject To Contractual Arbitration Provisions ................................... 4

8
        B.      It Is Clear From The Complaint And A Relevant Federal Statute
                That Class Treatment Will Not Be Superior, Which Provides a
9               Separate and Unique Reason for Striking Class Allegations ............... 7

10              1.      The TCPA Itself Demonstrates That Class Treatment Of
                        Plaintiff's Action Is Not Superior ............................................. 8

11              2.      Class Treatment Cannot Be Superior When DIRECTV Is
                        Prohibited by Federal Statute From Disclosing
12                      Information To Plaintiff That Would Be Necessary To
                        Identify The Members Of Her Proposed Class ........................ 10

13
III.    IN THE ALTERNATIVE, PLAINTIFF'S SUIT SHOULD BE
        TRANSFERRED TO THE CENTRAL DISTRICT ..................... 14

14
        A.      Plaintiff Falls Into The Class Defined In A Pending Action,
15              *Jenny Brown v. DIRECTV, LLC et al* ............................................. 14

16      B.      This Court Should Transfer This Action Under the "First-to-
                File" Rule ....................................................................................... 16

17
IV.     CONCLUSION ............................................................................. 18

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE OR
TRANSFER  3:13-CV-02073-L-WMC

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alltrade, Inc. v. Uniweld Products, Inc.*,
 946 F.2d 622 (9th Cir. 1991) ................................................................... 16

*Balthazor v. Central Credit Services, Inc.*,
 2012 WL 6725872 (S.D. Fla., Dec. 27, 2012) ..................................................... 6

*Bryant v. OxxfordExpress, Inc.*,
 181 F. Supp. 2d 1045 (C.D. Cal. 2000).............................................................. 16

*California ex rel. State Lands Comm'n*,
 512 F.Supp. 36 (N.D. Cal. 1981)........................................................................ 3

*Collins v. Gamestop Corp.*,
 2010 WL 3077671 (N.D. Cal., Aug. 6, 2010)......................................................... 3

*Connelly v. Hilton Grand Vacations Co., LLC*,
 12CV599 JLS MDD, 2013 WL 5835414 (S.D. Cal. Oct. 29, 2013) .............. 5, 14

*Connelly v. Hilton Grand Vacations Co., LLC*,
 2012 WL 2129364 (S.D. Cal. June 11, 2012) ......................................................... 5

*Dish Network LLC v. Fun Dish, Inc.*,
 1:08CV1540, 2012 WL 4322605 (N.D. Ohio, Sept. 20, 2012) ......................... 12

*Eisen v. Carlisle and Jacquelin*,
 417 U.S. 156 (1974) ................................................................................................ 8

*Forman v. Data Transfer, Inc.*,
 164 F.R.D. 400 (E.D. Pa. 1995) ........................................................................... 6

*Gannon v. Network Telephone Services, Inc*,.
 2013 WL 2450199 (C.D. Cal., June 5, 2013)......................................................... 5

*Gen. Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) ............................................................................................... 3

*Gene & Gene LLC v. BioPay LLC*,
 541 F.3d 318 (5th Cir. 2008) ................................................................................ 6

*Guthy-RenkerFitness, L.L.C. v. Icon Health & Fitness, Inc.*,
 179 F.R.D. 264 (C.D. Cal. 1998) ........................................................................ 16

*Hicks v. Client Services, Inc.*,
 2008 WL 5479111 (S.D. Fla., Dec. 11, 2008) ...................................................... 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE OR
TRANSFER  3:13-CV-02073-L-WMC

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Hovsepian v. Apple, Inc.*,

4

2009 WL 5069144 (N.D. Cal., Dec. 17, 2009) .................................................... 3

5

*Hunt v. 21st Mortgage Corp.*,

2013 WL 5230061 (N.D. Ala., Sept. 17, 2013) ................................................ 1

6

*Inherent.com v. Martindale-Hubbell*,

7

420 F. Supp. 2d 1093 (N.D. Cal. 2006) ............................................................. 16

8

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,

9

544 F.Supp.2d 949 (N.D.Cal.2008) .................................................................... 17

10

*Joshua Brown v. DIRECTV, LLC, et. al.*,

2013 WL 3273811 (C. D. Cal., Jun. 26, 2013) ............................................. 7, 14

11

*Kenro, Inc. v. Fax Daily, Inc.*,

12

962 F.Supp. 1162 (S.D. Ind. 1997) ...................................................................... 6

13

*Levitt v. Fax.com*,

14

2007 U.S. Dist. LEXIS 83143 (D. Md. May 25, 2007) ....................................... 6

15

*Mazur v. eBay Inc.*,

257 F.R.D. 563 (N.D. Cal. 2009) ..................................................................... 4, 7

16

*Mims v. Arrow Financial Services, L.L. C.*,

17

132 S.Ct. 740 (2012) ........................................................................................... 9

18

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,

678 F.2d 93 (9th Cir. 1982) ............................................................................... 16

19

*PETA, Inc. v. Beyond the Frame, Ltd.*,

20

2011 WL 686158 (C.D. Cal., Feb. 16, 2011) ..................................................... 17

21

*Sanders v. Apple, Inc.*,

672 F.Supp.2d 978 (N.D. Cal. 2009) .................................................................... 3

22

*Simon v. Am. Tel. & Tel. Corp.*,

23

2001 WL 34135273 (C.D. Cal., Jan. 26, 2001) .................................................... 7

24

*Thorpe v. Abbott Labs., Inc.*,

534 F.Supp.2d 1120 (N.D. Cal. 2008) .................................................................. 3

25

*Tietsworth v. Sears Roebuck & Co.*,

26

720 F.Supp.2d 1123 (N.D. Cal. 2010) .................................................................. 2

27

*Valentino v. Carter-Wallace, Inc.*,

28

97 F.3d 1227 (9th Cir. 1996) ............................................................................... 8

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Vandervort v. Balboa Capital Corp.*,
  287 F.R.D. 554 (C.D. Cal. 2012) ...................................................................... 4

*Ward v. Follett Corp.*,
  158 F.R.D. 645 (N.D. Cal. 1994) .................................................................... 16

*Weinstein v. Metlife, Inc.*,
  2006 WL 3201045 (N.D. Cal. Nov. 6, 2006) .................................................. 17

*Zeisel v. Diamond Foods, Inc.*,
  N2011 WL 2221113 (N.D. Cal., June 7, 2011) ................................................ 4

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 *opinion amended on denial of reh'g*, 273 F.3d 1266
  (9th Cir. 2001) ................................................................................................... 8

## STATUTES

47 U.S.C. § 338, *et seq.* ...........................................................................7, 10, 11, 12

## OTHER AUTHORITIES

137 Cong. Rec. S16204-01 (1991) ................................................................. 8, 9, 13

## RULES

Federal Rule of Civil Procedure 12(f) .................................................................. 2, 3

Federal Rule of Civil Procedure 23 ...................................................2, 3, 4, 6, 7 13

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iv

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE OR
TRANSFER  3:13-CV-02073-L-WM

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3       DIRECTV, like many American companies, is facing a flurry of TCPA

4 lawsuits—putative nationwide class action suits that seek the uncapped statutory

5 damages of $500 per call for what TCPA Plaintiffs' lawyers hope will be millions

6 of persons.  Here, Plaintiff Tara Miller complains that she was contacted on her cell

7 phone by or on behalf of DIRECTV in relation to a subscriber account, but that

8 such calls were made "in error" and that she had never provided her telephone

9 number to DIRECTV.  *See* Compl., ¶¶ 13-17.  She seeks to represent a class of all

10 persons in the United States who received on their cell phones **any** telephone call

11 placed by or on behalf of DIRECTV with an automated telephone dialing

12 system[1]—Plaintiff's class would thus include **every single person** who received an

13 automated telephone call made by or on behalf of DIRECTV **for any reason** in the

14 past **four years** (and it is common knowledge that DIRECTV has over 20 million

15 subscribers).

16       Following the current trend of "sue now, investigate later" that is all too

17 obvious in many TCPA-based lawsuits, Plaintiff simply claims that her

18 membership would "number in the hundreds of thousands, if not more."  Compl., ¶

19 27.  However, it is not an automatic violation of the TCPA to place calls to a

20 cellular telephone, even with an autodialer, and so Plaintiff's proposed class is

21 populated by many people who may have been called on their cell phones, but who

22 
---
23 [1] The issue of what constitutes an automated telephone dialing system ("ATDS")
under the TCPA will likely be a source of disagreement between the parties.
24 DIRECTV's position (which is supported by the plain language of the TCPA) is
that a system is only an ATDS if it has the current capacity, at the time a call is
25 made, to randomly or sequentially dial numbers. *See also Hunt v. 21st Mortgage
Corp.*, No. 2:12-CV-2697-WMA, 2013 WL 5230061, *4 (N.D. Ala. Sept. 17, 2013)
26 ("to meet the TCPA definition of an 'automatic telephone dialing system,' a system
must have a present capacity, at the time the calls were being made, to store or
27 produce and call numbers from a number generator.").  DIRECTV notes that calls
made by or on behalf of DIRECTV are not made with equipment that is capable of
28 randomly or sequentially dialing numbers and placing calls to those numbers, and
thus are not "autodialed" calls that are subject to the TCPA's restrictions.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

would have no viable cause of action under the TCPA (i.e., subscribers who provided their cell phones to DIRECTV as their primary points of contact).  It is thus clear from the face of the complaint that the class is overbroad, containing vast numbers of people with no viable claims.

Plaintiff apparently plans to force DIRECTV to ascertain the class by slowly carving out groups from the class membership as it proves up its defenses, such as consent or the requirement to arbitrate.  But when it is obvious that a class defined in a complaint is overbroad, and is populated by large groups with no viable cause of action to assert or who are bound to arbitrate any disputes, a Complaint fails on its face to assert a viable class definition that can support proceeding on a class wide basis.  *See* Part II.A, below.  Moreover, when a Plaintiff claims that ascertaining class membership is dependant on a Defendant's records, and when such records cannot be shared with Plaintiff's counsel under applicable federal statutes, it is clear that class treatment of Plaintiff's claim cannot be superior, as required by Rule 23.  *See* Part II.B, below.  Thus DIRECTV asks that the Court strike the class allegations from Plaintiff's Complaint pursuant to Federal Rule of Procedure 12(f).

While DIRECTV would ask that the Court look to the merits of its arguments in Part II and rule thereon, DIRECTV acknowledges that this Court may determine that such arguments should be considered by the district court that already has jurisdiction over Plaintiff, who is a class member in a related action pending in the Central District of California.  Thus, as detailed in Part III, in the alternative DIRECTV asks that this Court transfer the action to that court, and leave the Rule 12(f) issue for that court to determine.[2]

## II.    THIS COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS PURSUANT TO RULE 12(F).

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a

---

[2] Indeed, the judge in the related action has taken similar arguments under advisement, with briefing already completed by the parties in that action.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See also Tietsworth v. Sears Roebuck & Co.,* 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010) (same).  Thus, a court may—and should—grant a motion to strike class allegations if it is clear from the complaint that class claims cannot be maintained.  *See Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 990 (N.D. Cal. 2009) (granting motion to strike class allegations and noting, "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *see also Collins v. Gamestop Corp.*, 2010 WL 3077671, *2 (N.D. Cal., Aug. 6, 2010) (same); *see also Hovsepian v. Apple, Inc.*, 2009 WL 5069144, *2 (N.D. Cal., Dec. 17, 2009) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

Importantly, "where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *California ex rel. State Lands Comm'n*, 512 F.Supp. 36, 38 (N.D. Cal. 1981).  And while class allegations are usually tested after one party has filed a motion for class certification (*e.g., Thorpe v. Abbott Labs., Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal. 2008)), the Supreme Court has explained, "[s]ometimes the issues are plain enough from the pleadings" to determine whether class claims are appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  Here, it is apparent from the face of the Complaint that the proposed class against DIRECTV is not ascertainable because it is vastly overbroad.  *See* Part II.A, below.  Moreover, while it is also clear from the Complaint that the plaintiff believes her class can only be defined by a review of DIRECTV's records to weed out DIRECTV subscribers, DIRECTV is precluded by federal law from divulging any personally identifiable information ("PII") regarding its subscribers without their prior written consent.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

1    *See* Part II.B, below.  Thus, it will be impossible to ascertain the identity of class

2    members which means that Plaintiff's proposed class does not satisfy the

3    "superiority" requirement of Rule 23.

4          Because of the obvious failings in the Complaint, the inherent nature of

5    TCPA claims, and the special circumstances impacting manageability, it is not only

6    proper for the Court to assess the Complaint's viability, but also to strike Plaintiff's

7    class allegations from the Complaint before wasting resources of the Court and the

8    parties.

9
10
11

**A.**    **The Class Allegations Should Be Stricken Because The Class Is Overbroad And Includes Individuals With No Viable Claims, Individuals Who Are Necessarily Covered By Existing Class Action Suits, As Well As DIRECTV Customers Who Are Subject To Contractual Arbitration Provisions.**

12          Plaintiff's proposed class includes every person in the United States who

13    received **<u>any</u>** call from DIRECTV on their cell phone made through the use of any

14    automatic telephone dialing system.  Compl., ¶ 26.  This class is wildly overbroad

15    and could never be ascertained because it includes persons who have consented to

16    receive calls from DIRECTV (and therefore have no actionable TCPA claim).  It

17    also includes DIRECTV subscribers who are contractually obligated to arbitrate

18    any claims (including TCPA claims) against DIRECTV on an individual basis.

19    And, as discussed below, Plaintiff's proposed class includes members of two other

20    putative classes currently pending in federal courts (non-subscribers who received

21    debt collection and telemarketing calls).  Thus, Plaintiff's class as it is currently

22    defined is overbroad, not ascertainable, and should be stricken.  "[T]he class

23    definition must definite enough so that it is administratively feasible for the court to

24    ascertain whether an individual is a member."  *Zeisel v. Diamond Foods, Inc*., 2011

25    WL 2221113, *6 (N.D. Cal., June 7, 2011).  Moreover, "[a] class must be

26    ascertainable without inquiring into the merits of the case."  *Vandervort v. Balboa*

27    *Capital Corp*., 287 F.R.D. 554, 557 (C.D. Cal. 2012).  *See also Mazur v. eBay Inc*.,

28    257 F.R.D. 563, 567 (N.D. Cal. 2009) ("As a threshold matter, and apart from the

explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists.").

Here, Plaintiff's class cannot be ascertained as defined because it includes many people who would not have an actionable TCPA claim against DIRECTV, such as all those who consented to whatever contact they received (i.e., a call scheduling a technician visit, or a return call to a subscriber, or a collections-based call made to a subscriber at the primary account contact number provided by that subscriber).  Indeed, because consent is a defense under the TCPA, Plaintiff's proposed class membership would be impossible to ascertain unless individual inquiries are made as to whether each proposed class member consented to be contacted by DIRECTV.  Two recent district courts in California have found that inquiries into consent preclude certification of similarly defined TCPA classes.  *See Connelly v. Hilton Grand Vacations Co., LLC*, 12CV599 JLS MDD, 2013 WL 5835414, *2-5 (S.D. Cal. Oct. 29, 2013) (denying TCPA class certification based on a finding that inquiries into consent create individualized factual determinations that would make class procedures unbearable); and *Gannon v. Network Telephone Services, Inc*,. 2013 WL 2450199, *2 (C.D. Cal., June 5, 2013) (same).  Notably, in *Connelly*, the court had initially refused to strike the class actions on a motion to strike, believing that such a ruling would be premature.  *Connelly v. Hilton Grand Vacations Co., LLC*, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012). Thereafter, the parties undertook almost another year of litigation and discovery, only for the court to determine in the class certification phase that the defendant had likely obtained the class members cells phone numbers through a "variety of sources over a period of time", thereby requiring individualized inquiry into consent.  *Connelly*, 2013 WL 5835414 at *4.  If the court in *Connelly* had recognized the irreparable problems with the classes and stricken them at the pleadings stage instead of waiting until class certification, that decision would have

1    saved the time and resources of everyone involved.[3]

2         Federal courts in other districts have reached similar conclusions.  In *Hicks v.*
3    *Client Services, Inc*., 2008 WL 5479111, at *7 (S.D. Fla., Dec. 11, 2008), the court
4    denied certification of a TCPA class related to voice mail messages plaintiff
5    allegedly received —even though the proposed class definition cautiously avoided
6    using the word "consent"—based on a general finding that no matter how it is
7    phrased, the issue of consent "is an essential individual issue under the TCPA" that
8    would have to be determined as to each member and that "makes class certification
9    inappropriate."  *Id*. at *7-8, *citing Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318,
10   326–27 (5th Cir. 2008); *Levitt v. Fax.com*, 2007 U.S. Dist. LEXIS 83143 at *11–13
11   (D. Md. May 25, 2007); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1169–70
12   (S.D. Ind. 1997) (ruling that the consent issue made class certification inappropriate
13   because of lack of typicality, commonality, and predominance); *Forman v. Data*
14   *Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (same).   Moreover, the court
15   concluded that plaintiff failed to "describe how she intends to [show a lack of
16   express consent] without the trial degenerating into mini-trials on consent of every
17   class member." *Hicks*, 2008 WL 5479111 at *8.  Based on this finding, the court
18   held that class certification of the TCPA claims would be improper for lack of
19   commonality under Rule 23(a), and predominance under Rule 23(b)(3).  *Id*. at *8-
20   10; *see also Balthazor v. Central Credit Services, Inc*., 2012 WL 6725872, at *4
21   (S.D. Fla., Dec. 27, 2012) (similarly rejecting the plaintiff's argument that consent
22   was not an issue with respect to a proposed TCPA class because the defendant had
23   not produced any evidence of consent, noting that "while it is true that [defendant]
24   will ultimately bear the burden of establishing prior express consent, at the class
25   certification stage, the burden is on the Plaintiff to establish the Rule 23 factors.")
26   *Id*.

27   _____
     [3] Moreover, the circumstances in *Connelly* were different in that arguments
28   involving discovery needed to show lack of consent did not involve a federal statute
     precluding the sharing of such information as is the case here (*see* Part II.B below).

1    It is clear from the face of the Complaint that the issue of whether each

2    putative class member consented to be called must be determined on an individual

3    basis.  Such a class is, on its face, not ascertainable.  *See Mazur*, 257 F.R.D. at 567

4    (N.D. Cal. 2009) ("Because the class as currently defined would include these non-

5    harmed auction winners, this portion of the class definition is both imprecise and

6    overbroad."); *see also Simon v. Am. Tel. & Tel. Corp.*, 2001 WL 34135273, at *3

7    (C.D. Cal., Jan. 26, 2001) (holding that class certification was inappropriate

8    because the proposed class definitions included persons who had not yet been

9    aggrieved).  Moreover, as a district judge in the Central District recently held,

10   TCPA claims are covered by DIRECTV's Customer Agreement, and subscribers

11   who entered into such an agreement with DIRECTV are bound to individually

12   arbitrate claims brought under the TCPA and cannot participate in class actions.

13   *See Joshua Brown v. DIRECTV, LLC, et. al.,* 2013 WL 3273811, at *10 (C. D. Cal.,

14   Jun. 26, 2013).  This is additional proof that the class defined by Plaintiff's

15   Complaint is impermissibly overbroad, as it includes all of DIRECTV's subscribers

16   who were called by DIRECTV, even though such persons must arbitrate their

17   disputes on an individual basis.

18   **B.    It Is Clear From The Complaint And A Relevant Federal Statute**
     **That Class Treatment Will Not Be Superior, Which Provides a**
19   **Separate and Unique Reason for Striking Class Allegations.**

20   Plaintiff asserts that "The Class can be identified through Defendants'

21   records or Defendants' agents' records."  Compl., ¶ 30.  However, because plaintiff

22   concedes that class membership depends on a review of DIRECTV's customer

23   records, it is clear from the Complaint that the class action format will not be

24   manageable or efficient, and that Plaintiff and other putative class members have

25   superior alternatives to pursue under the TCPA.  *See* Fed.R.Civ.P 23(b)(3) (court

26   must determine whether a class action is superior to other available methods for

27   fairly and efficiently adjudicating the controversy).  Indeed, the constraints placed

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

7

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

upon DIRECTV by the Satellite Home Viewers Extension and Reauthorization Act of 2004 ("SHVERA"), Pub. L. No. 108-447, 118 Stat. 2809, 3393, (codified at 47 U.S.C. § 338, *et seq.*) simply will not allow the kind of discovery that Plaintiff makes clear would be required in order to ascertain the class membership (*see* Compl., ¶ 30), since the inquiries would depend on DIRECTV's account records—records containing subscribers' personally identifiable information ("PII").

In evaluating superiority, the court must consider the likely difficulties in managing the case, specifically "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 164, (1974). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (citation omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (holding that a "class action is the superior method for managing litigation if no realistic alternative exists").

### 1. The TCPA Itself Demonstrates That Class Treatment Of Plaintiff's Action Is Not Superior.

Class treatment is not a superior procedure for adjudicating TCPA claims because the inquiries to determine liability and consent are inherently individualized (as discussed in Part II.A above). Recognizing this fact, the drafters crafted the statute with individual actions in mind as the superior method for handling claims. When discussing the provision allowing for private rights of action before passage of the TCPA, its author, Senator Hollings, expressed his "hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court." Remarks of Senator Hollings, 137 Cong. Rec. S16204-01, 1991. He continued: "Small claims court or a similar court ***would allow the consumer to appear before the court without an attorney***. The amount

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

8

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

of damages in this legislation is ***set to be fair to both the consumer and the telemarketer***." *Id*. (emphasis added).  While the Supreme Court has since made clear that TCPA plaintiffs are not required to remain in the State court system, since the TCPA is a federal statute that allows for a federal right of action (*see Mims v. Arrow Financial Services, L.L. C.*, 132 S.Ct. 740 (2012)), it is significant that the TCPA makes no mention of classwide procedures being available, and omits recovery of attorneys' fees.  Allowing class complaints to proceed with threats of millions or billions of dollars of statutory damages is directly contrary to the intent of its drafters, and the balance of fairness the drafters were attempting to strike in setting the statutory damages figure at such a generous figure relative to the nuisance of an unwanted call.

Unlike the kinds of cases where tiny or insignificant damages would keep claims from being pursued absent class treatment, TCPA cases involve significant dollar amounts for every alleged offending call or text.  Plaintiff, who claims the "harm" of receiving some calls placed "in error" by or on behalf of DIRECTV, could quickly and inexpensively seek the not-insubstantial damages of $500/$1500 for these calls.[4]  As evidenced by the comments of the drafters of the TCPA, the disproportionate level of statutory damages of $500 per call, when compared to the nuisance of an unwanted phone call, was set at that level to incentivize consumers to pursue their claims in small claims court without an attorney in an effort to balance fairness to consumers and to the telemarketers who called them in violation of the TCPA.  *See* Remarks of Senator Hollings, 137 Cong. Rec. S16204-01, 1991.  That balance of fairness is thrown completely off kilter when class actions, such as this one, are allowed to proceed.

With the TCPA designed to afford consumers a quick and simple resolution

---

[4] Indeed, she (and every putative class member) would certainly recover a higher amount of damages for valid claims outside the class action context, particularly in view of the fact that attorneys' fee are not recoverable under the statute so fees come straight out of any settlement or award.

for their claims, problems with manageability such as those detailed in Part II.B.2 below weigh in favor of a finding from this Court that class allegations should be stricken here, because class treatment cannot be superior given the barriers to the discovery the Complaint claims is necessary to identify potential class members.

### 2. Class Treatment Cannot Be Superior When DIRECTV Is Prohibited by Federal Statute From Disclosing Information To Plaintiff That Would Be Necessary To Identify The Members Of Her Proposed Class.

Plaintiff claims that members of her class will be identifiable through a review of DIRECTV's records or the records of DIRECTV's agents. *See* Compl.¶ 30. Putting aside for now the points raised in Part II.A above (that the class is not ascertainable because the definition is incredibly overinclusive), there is another problem with Plaintiff's plan to "figure out later" which persons to remove from the class membership:  the Satellite Home Viewers Extension and Reauthorization Act of 2004 ("SHVERA"), Pub. L. No. 108-447, 118 Stat. 2809, 3393, (codified at 47 U.S.C. § 338, *et seq.*).  SHVERA is a federal statute applicable to DIRECTV and other providers of satellite television programming that controls DIRECTV's ability to allow third parties (such as Plaintiff and her attorneys) access to its subscribers' PII.  Under this federal statute – which is specific to satellite carriers – DIRECTV is not permitted to share any personal information related to its subscribers (even with a court order) **unless** each subscriber affirmatively consents in writing or electronically to the provision of that information.  As detailed below, a protective order will not suffice.

In general, SHVERA requires DIRECTV to protect its subscribers' PII.  *See generally* 47 U.S.C. § 338(i) (detailing subscribers' privacy rights).  But more specifically, SHVERA prohibits DIRECTV from disclosing – **without subscribers' written or electronic consent** – subscribers' PII.  *See id.*, 338(i)(4)(A) (consent required for disclosure).  Section 338(i)(4)(A) states in particular:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

> Except as provided in subparagraph (B), **a satellite carrier** shall not disclose personally identifiable information concerning any subscriber **without the prior written or electronic consent of the subscriber concerned** and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or satellite carrier.

*Id.* (emphasis added).  The exceptions discussed in Section 4(B) of the personal information section do not permit disclosure to Plaintiff or her attorneys of subscribers' PII (such as names or telephone numbers), which DIRECTV can disclose only in limited ways when necessary to conduct its legitimate business or in a few other specified instances.[5]  For example, in the "exceptions" provisions, Section 338(i)(4)(B)(ii) explains that disclosure to a third party can be made pursuant to a court order, but only if a subscriber has been notified of that order and has a chance to object:

> (B) Exceptions
>
> A satellite carrier may disclose such information if the disclosure is--
>
> . . . .
>
> (ii) subject to paragraph (9), made pursuant to a court order authorizing such disclosure, **if the subscriber is notified of such order by the person to whom the order is directed**;

*See id.*, 338(i)(4)(B)(ii) (emphasis added).  A court order alone is thus not enough to protect DIRECTV from allegations that it has violated SHVERA.[6]

Another federal court recently considered SHVERA's impact on discovery when it was considering a discovery dispute involving a different satellite carrier, DISH Network.  That Ohio district court recognized the impact of this federal statute on the disclosure of information:  "The Court finds that SHVERA, at 47 U.S.C. § 338(i)(4)(A)and (B), requires that, before disclosing subscribers' confidential, **personally identifiable information,** the party holding such

---

[5] Businesses with whom DIRECTV shares its subscribers' PII as part of DIRECTV's legitimate business operations (such as third-party debt collectors) are prohibited by contract from disclosing that PII to third parties.

[6] Moreover, that exception for court orders arguably contemplates only orders sought by government entities, pursuant to a later paragraph 9.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

subscriber information **must provide the subscriber notice of a court order requiring such disclosure to which a subscriber may object."** *Dish Network LLC v. Fun Dish, Inc.*, 1:08CV1540, 2012 WL 4322605, *7 (N.D. Ohio, Sept. 20, 2012) (emphasis added).  The *Dish Network* court noted that SHVERA could not be ignored, when significant penalties existed for any violation of that law.  *Id.  See also* Section 338(i)(7) ("Penalties", establishing that each subscriber is entitled to pursue an action against DIRECTV to recover statutory damages of $100 for each day that PII was disclosed without consent, up to $1,000, as well as punitive damages and reasonable attorneys' fees).  The *Dish Network* court then found that with SHVERA governing discovery, a Special Master would need to be appointed to oversee discovery in that case between two corporations to ensure that PII was not shared absent a subscriber's consent.  *See id.*  It is apparent how much more difficult the discovery process would be in the context of a putative nationwide class.

As Plaintiff asserts, she is not a DIRECTV subscriber who provided a telephone number to DIRECTV.  *See* Compl., ¶ 17.  She will attempt to find other class members by reviewing DIRECTV's records (*see* Compl., ¶ 30), but DIRECTV cannot simply hand over customer records that would show the PII of its subscribers (such as names and telephone numbers associated with those subscribers, and records showing when those telephone numbers were provided); similarly, DIRECTV cannot allow persons doing business with it from handing over a subscriber's PII to anyone other than that subscriber.  *See* Section 338(i)(7).  Moreover, DIRECTV would not be able to develop its defenses, such as express consent, without recourse to its customer records, to show which persons should be excluded from Plaintiff's class.

It is clear from the requirements of SHVERA detailed above that the discovery nightmares would be horrendous (in defending claims brought under a statute that did not contemplate class treatment, and indeed contemplated individual

actions expected to be brought in State courts or small claims court without need of an attorney).  It would be an unfair burden – and it would be a nightmare to manage – to require DIRECTV to acquire consent from **all** of its subscribers who have received calls (which could be in the tens of millions of persons) so that Plaintiff can comb through those customers' PII (names, phone numbers, addresses, and so on) and try to constitute a class—a class that likely would not include many (or any) of the persons from whom information was sought, in part because DIRECTV's own subscribers would need to individually arbitrate claims.

Essentially, it would require notice and a chance to opt-out from providing information to **every single subscriber** out of tens of millions of subscribers who may have received a call in the past four years **before records could even be checked** to see whether a person could indeed join the putative class based on what number that customer provided, and whether someone else (such as Plaintiff) was called in error.  The management and expense of such a process would be unwieldy and extremely burdensome both on the parties and on the Court, and thus it is clear that class treatment of Plaintiff's TCPA claim is not a superior method of adjudication, as required for certification under Rule 23.  This conclusion is, again, reinforced by the TCPA itself, as discussed above.

Plaintiff is not without recourse absent her class action lawsuit.  She can pursue her individual claims for $500-$1500 for each of the calls she claims to have received—a substantial amount of statutory damages when Plaintiff does not allege (because she cannot) actual harm from the call attempts.[7]  Thus, when DIRECTV's requirements under federal statute preclude Plaintiff from accessing the information

---

[7] Indeed, this Court should consider why Plaintiff would include class allegations at all, when the statutory remedy of $500-$1500 *per call* was set to incent individual plaintiffs to pursue more than adequate compensation for the potential aggravation of receiving unwanted calls in small claims court.  *See* 137 Cong. Rec. S16204-01 (1991) (remarks of Senator Hollings).  The only logical explanation is that Plaintiff's *counsel* is interested in keeping threatened class litigation, and the hopes of staggering classwide statutory damages, alive in order to recoup a large fee for themselves out of the proceeds.

1  that the Complaint states she needs to identify her class, it is apparent from the

2  outset that class procedures will not be superior.  For this reason, too, Plaintiff's

3  class allegations should be stricken from the Complaint.

4  **III.  IN THE ALTERNATIVE, PLAINTIFF'S SUIT SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT**

5

6  **A.  Plaintiff Falls Into The Class Defined In A Pending Action, *Jenny Brown v. DIRECTV, LLC* et al.**

7  Plaintiff's action should be stayed and transferred to the Central District of

8  California because it is substantially similar to another putative TCPA class action

9  that is currently pending before Judge Dolly Gee: *Jenny Brown v. Credit*

10  *Management, LP*, Central District of California Case No. 13-cv-01170-DMG (the

11  "Jenny Brown Action").  DIRECTV was added as a defendant to that action via a

12  Third Amended Complaint on August 14, 2013 – three weeks before Plaintiff

13  Miller filed her Complaint on September 5, 2013.[8]  Both actions allege that

14  DIRECTV violated section 227(b) of the TCPA, and seek statutory damages and

15  injunctive relief on behalf of nationwide classes.  Compare, generally, Compl. with

16  Ex. A to Notice of Related Case (Jenny Brown Fourth Amended Complaint)

17  ("FAC").

18  The operative FAC in the Jenny Brown Action seeks to certify the following

19  class:

20  > All persons residing within the United States who, on or
21  > after four years prior to the filing of this action, received a
   > non-emergency telephone call(s) from DIRECTV and/or
22  > its third-party debt collectors regarding a debt allegedly
   > owed to DIRECTV, to a cellular telephone through the
   > use of an automatic telephone dialing system or an
23

24  _____

[8] The Jenny Brown action was transferred from the Eastern District of Missouri to the Central District of California to join another action *Joshua Brown v. DIRECTV*, C.D. Cal., 2:12-cv-08382-DMG-E (the "Joshua Brown Action") on or about February 27, 2013.  The Joshua Brown Action involved TCPA claims brought by a DIRECTV subscriber and DIRECTV moved to compel arbitration of those claims based on the Plaintiff's Customer Agreement with DIRECTV.  After months and many rounds of briefing, the court granted DIRECTV's Motion to Compel Arbitration and Dismissed DIRECTV from that action on June 26, 2013.  *See Joshua Brown*, 2013 WL 3273811, at *10.

25
26
27
28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

14

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

artificial or prerecorded voice and who did not provide
the cellular phone number called on any initial application
for DIRECTV service.

Ex. A to Notice of Related Cases, ¶ 55.

This class is similar to and includes members of Plaintiff Miller's proposed

class which is defined as:

[A]ll persons within the United States who received any
telephone call from Defendant or their agent/s and/or
employee/s to said person's cellular telephone made
through the use of any automatic telephone dialing system
or with an artificial or prerecorded voice, which calls was
not made for emergency purposes within the four years
prior to the filing of this Complaint.

Compl., ¶ 26.  Although Miller's proposed class is not, on its face, limited to calls

made regarding a debt allegedly owed to DIRECTV, Plaintiff's complaint makes it

clear that the calls she allegedly received were attempting to contact a current

DIRECTV subscriber regarding the subscriber's account with DIRECTV.  Compl.,

¶ 16.[9]  Thus, Plaintiff Miller is a member of Plaintiff Jenny Brown's class even if

she seeks to represent a larger class.

Based on the first-filed rule described below, Plaintiff Miller's case should be

transferred to the Central District to be adjudicated with the Jenny Brown Action,

as Plaintiff is a member of that putative class.[10]  Thus, to the extent Miller's

putative class includes non-DIRECTV subscribers who received telemarketing or

debt collection calls, those members would already belong to either the Jenny

Brown or Bill Cooke classes.  And to the extent the class includes any DIRECTV

---

[9] Moreover, Plaintiff is aware of the nature of the communications she received and
will not deny (because she cannot) that the calls she received pertained to attempts
to collect monies owed by a DIRECTV subscriber.

[10] DIRECTV notes that while the Jenny Brown Action would include Plaintiff and
many of her putative class members (as it covers anyone receiving debt-based
calls), there is another pending TCPA class action (pursed by some of the same
attorneys as in Jenny Brown) currently in Florida.  In *Bill Cooke v. DIRECTV, Inc.*,
Southern District of Florida, Case No. 1:13-cv-22696-KMM, the Plaintiff initially
proposed a class that identical to that here: a nationwide class of all persons who
received DIRECTV-related calls.  Because that class would have encompassed the
Jenny Brown class, the TCPA attorneys behind both actions amended the Cooke
Complaint to define a class of persons who allegedly received telemarketing calls.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

subscribers, those persons would be compelled to arbitrate their claims against DIRECTV and cannot participate in any class.

### B.   This Court Should Transfer This Action Under the "First-to-File" Rule

In the Ninth Circuit, the first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (dismissing later-filed case).  Under the first-to-file rule, a district court may transfer, stay or dismiss an action when a similar action has been filed in another district court. *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625-26 (9th Cir. 1991).

The underlying purposes of the first-to-file rule are to avoid duplicative litigation and promote judicial efficiency, which "should not be lightly disregarded." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *Guthy-RenkerFitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998); *Alltrade, Inc.*, 946 F.2d at 625. The court that "first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter*, 678 F.2d at 95.  Accordingly, unless compelling circumstances justify departure from this rule, the first-filed case should be permitted to proceed without concern about a conflicting order being issued in the later filed action. *See Ward v. Follett Corp.*, 158 F.R.D. 645, 648-650 (N.D. Cal. 1994).

In the Ninth Circuit, district courts applying the first-to-file rule look to three threshold factors, all of which are met here: (1) the chronology of the two actions (i.e., which action was filed first); (2) the similarity of the parties; and (3) the similarity of the issues. *Bryant v. OxxfordExpress, Inc.*, 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000).  First, as explained above, the Brown Action pending in the

1    Central District and the Cooke Action pending in Florida were chronologically filed

2    first against DIRECTV.

3        Next, DIRECTV is a defendant in all actions.  Although the named Plaintiffs

4    in the two actions are different, in a class action, it is the classes, and not the class

5    representatives, who are compared.  *Weinstein v. Metlife, Inc.*, 2006 WL 3201045,

6    at *4 (N.D. Cal. Nov. 6, 2006).  Moreover, the fact that there are additional

7    defendants in one of these actions is not dispositive.  *Id*.; see also *Intersearch*

8    *Worldwide, Ltd. v. Intersearch Group, Inc*., 544 F.Supp.2d 949, 959 n. 6 (N.D.Cal.

9    2008) ("[E]xact identity is not required to satisfy the first-to-file rule. The rule is

10   satisfied if some [of] the parties in one matter are also in the other matter, regardless

11   of whether there are additional unmatched parties in one or both matters.") (citations

12   omitted).  "Indeed, the first-to-file rule does not require identical parties or issues,

13   so long as the actions are substantially similar or involve substantial overlap."

14   *PETA, Inc. v. Beyond the Frame, Ltd*., 2011 WL 686158, at *2 (C.D. Cal., Feb. 16,

15   2011).

16       Finally, the third factor is met here because the issue is the same in each of

17   the lawsuits: whether DIRECTV violated the TCPA by calling (or having others

18   call on its behalf) consumers on their cell phones using equipment that has the

19   capacity to autodial numbers, without the prior express consent of the consumers.

20       Because all three factors are met here, this Court should use its discretion to

21   transfer this Action to the Central District of California.  Plaintiff Miller is a

22   member of Jenny Brown's putative class, and many of the issues in the lawsuits are

23   identical and have already been briefed in the Brown Action.  In fact, DIRECTV

24   has filed a Motion to Strike Jenny Brown's proposed class by making several of the

25   same arguments advanced above.  That motion was taken under submission on

26   December 12, 2103 and the parties are currently waiting for the Court to make an

27   order.  *See Jenny Brown v. Credit Management, LP*, Central District of California

28   Case No. 13-cv-01170-DMG, Dkt. No. 140.  DIRECTV should not have to defend

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

17

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC

the same lawsuit in two different districts, thereby risking inconsistent judgments and wasting valuable judicial resources.

## IV.   CONCLUSION

DIRECTV believes this Court can strike the class allegations (¶¶ 25-36) from the face of the Complaint, and should do so.  However, if the Court declines to do so, the Court at minimum should transfer this action to Judge Dolly Gee in the Central District of California.


Dated:  December 18, 2013          MANATT, PHELPS & PHILLIPS, LLP


By:  /s/ Becca Wahlquist
Becca Wahlquist
Attorneys for DIRECTV, LLC

311155702.4

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO STRIKE OR TRANSFER
3:13-CV-02073-L-WMC